UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


RONEY L. HARRIS,               )
                 Plaintiff,    )
                                )
          v.                )          Civil Action No. 13-cv-30015-MGM
                                )
PHH MORTGAGE CORP.,     )
                                )
                 Defendant   )

REPORT AND RECOMMENDATION REGARDING PARTIES'
CROSS-MOTIONS FOR SUMMARY JUDGMENT
(Dkt. Nos. 96 and 114)

ROBERTSON, U.S.M.J.

This matter is before the court on cross-motions for summary judgment by plaintiff, Roney L. Harris ("Plaintiff"), and PHH Mortgage Corporation ("PHH"), the only remaining defendant, which have been referred to the undersigned for report and recommendation. The plaintiff is self-represented. The undersigned heard argument on the motions on March 2, 2015, and, for the reasons set forth below, recommends that the court refer the matter to the bankruptcy court for decision pursuant to 28 U.S.C. § 157 and the Standing Order reflected in Local Rule 201 of the United States District Court for the District of Massachusetts ("Local Rule 201"). To the extent the court declines to refer the matter to the bankruptcy court for decision, the undersigned recommends that Plaintiff's motion for summary judgment be granted in part and denied in part denied and that PHH's summary judgment motion be granted in part and denied in part.

I.    BACKGROUND

In or around February 2004, Plaintiff purchased property located at 615 White Street,

Springfield, Massachusetts ("the Premises").[1]  In conjunction with the purchase, he signed a

promissory note to BMC Mortgage Co. in MA ("BMC") in a principal amount of $122,640 ("the

Note").  The Note was secured by a mortgage on the Premises granted by Plaintiff to BMC.  The

mortgage was duly recorded on February 13, 2004 (Dkt. No. 113-1 at 15).  Thereafter, BMC

endorsed the Note to Cendant Mortgage Corporation ("Cendant"), which subsequently endorsed

the Note in blank (Dkt. No. 113 at 4).[2]  The mortgage took a different path:  BMC assigned it to

Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Wachovia Mortgage

Corporation ("Wachovia").  This assignment of the mortgage was timely recorded.  On the same

day, BMC purportedly assigned the mortgage to Cendant.  MERS, as nominee for Wachovia,

subsequently reassigned the mortgage to BMC.  For its part, Cendant purportedly assigned the

mortgage to MERS, which, in turn, purportedly assigned it to PHH (Dkt. No. 113-1 at 6).  Thus

matters stood as of July 21, 2008, when Plaintiff filed a Chapter 7 bankruptcy petition after PHH

had commenced foreclosure proceedings (Dkt. No. 113 at 6).  He listed the Note as an unsecured

debt and the mortgaged Premises as an asset of the bankruptcy estate (Dkt. 47 at 4).

During Plaintiff's bankruptcy proceedings, PHH filed a motion for relief from the

automatic stay seeking permission to foreclose on the Premises.  Plaintiff filed an opposition to

---

[1]Plaintiff failed to file a statement of undisputed facts in compliance with Local Rule 56.1 in
support of his summary judgment motion.  Although the facts set forth herein are drawn in
significant part from the facts set forth in PHH's opposition to Plaintiff's motion, *see Gillen v.
Corbin*, 839 F. Supp. 2d 376, 381 n.11 (D. Mass. 2011) (failure to file statement of allegedly
undisputed facts has legal effect of admitting opposing party's facts) (citing *United States Parcel
of Land & Residence at 18 Oakwood St., Dorchester, Mass.*, 958 F.2d 1, 5 (1st Cir. 1992)), these
facts genuinely do not appear to be in dispute.

[2] On January 25, 2005, Cendant was merged into or subsumed by PHH.  *See Harris v. PHH
Mortg. Corp., F/K/A Cendant Mortg. Corp.,* HDCV2011-00699; Consolidated Case
HDCV2012-00347, Amended Findings of Fact, Rulings of Law and Order for Judgment (Super
Ct. filed June 22, 2015), *4.

the motion and opened an adversary proceeding challenging PHH's standing to foreclose. The

motion for relief from stay and the adversary proceeding were consolidated for trial (Dkt. No.

113 at 7). Following trial of these matters, the Honorable Henry Boroff ruled that "PHH . . . did

not hold a valid and perfected mortgage on [the Premises] on the date of the commencement of

[Plaintiff's bankruptcy proceeding]" (Dkt. No. 113-1 at 7). This ruling was based on Judge

Boroff's finding that the last valid assignment of the mortgage was the assignment from MERS

as nominee for Wachovia to BMC (Dkt. No.113 at 7; Dkt. No. 113-1 at 6).

Plaintiff received his discharge from bankruptcy in December 2008 and his bankruptcy

case was closed on July 22, 2011 (Dkt. No. 47-9, at 2-3; BCAP Dkt. Report for bk-0831056,

Dkt. Nos. 63, 118).

On or around August 8, 2011, PHH, through counsel, notified Plaintiff of a mortgage

foreclosure sale of the Premises scheduled for September 12, 2011 (Dkt. No. 96-4 at 72-74). On

August 18, 2011, Plaintiff filed suit against PHH in the Superior Court Department of the Trial

Court, Hampden Division, Docket No. 2011-HDCV-00699, seeking damages and a declaration

that the mortgage on the Premises was void. On April 25, 2012, PHH filed a complaint to quiet

title in the Superior Court Department of the Trial Court, Hampden Division, Docket No. 2012-

HDCV-00347, seeking a ruling that would entitle it to foreclose on the Premises (Dkt. No. 113 at

8).

On January 22, 2013, Plaintiff filed this action, styling it as a Petition for Enforcement of

Injunction Contained in Bankruptcy Court Discharge Case Under the Discharge Injunction of 11

U.S.C. Sec. 524 and Other Relief (Dkt. No. 1). This court (Ponsor, J.) denied Plaintiff's requests

for injunctive relief because he had failed to demonstrate a likelihood of success on the merits

(Dkt. No. 23), and to stay the cases pending in the State court because this was not one of the

very rare situations in which it would be appropriate for a federal court to interfere in pending

State court proceedings (Dkt. No. 27). The court allowed PHH's motion for a more definite

statement, directing Plaintiff to file a written statement setting forth the specific acts he alleged

were committed by PHH in violation of the discharge injunction (Dkt. No. 24). Plaintiff filed his

Second Amended Petition for Enforcement of Injunction Contained in Bankruptcy Court

Discharge and Stay Provisions Against PHH Mortgage Corporation on October 30, 2013

("Second Amended Petition") (Dkt. No. 47). The Second Amended Petition is the operative

complaint in this case (Dkt. No. 63).[3] In June 2014, this court (Neiman, J.) denied Plaintiff's

renewed request to stay the state court cases (Dkt. Nos. 77, 81).

The state court cases were consolidated and tried, jury-waived, on three dates in June and

July 2014. In November 2014, this court allowed a short delay in the instant case based on the

pendency of the state court cases. In view of Plaintiff's objection to further delay, this court

declined to stay this case pending a post-trial ruling by the state court (Dkt. No. 100). The state

court has now ruled (Ferrera, J.), holding that judgment with nominal damages should enter for

Plaintiff on his claim against PHH for a violation of Massachusetts General Laws ch. 93A, and

---

[3] Plaintiff's Second Amended Petition included claims against Barbara Rouse in her capacity as Chief Justice of the Superior Court and Laura Gentile, Clerk of the Hampden County Superior Court. Plaintiff's claims against these individuals had previously been dismissed on Eleventh Amendment grounds (Dkt. Nos. 14, 25). Accordingly, on December 15, 2014, the court (Neiman, J.) struck so much of Plaintiff's Second Amended Petition as sought to assert claims against Judge Rouse and Ms. Gentile (Dkt. No. 108). The Second Amended Petition alleges that Plaintiff's right to due process was violated by a ruling denying him a motion hearing in one of the pending Superior Court cases. Not only have all parties associated with the state court already been dismissed from this action, so that there is no defendant against whom relief based on any such claim could be entered, but "it is beyond the powers of a federal court to promulgate rules for a state court." *Nollet v. Justices of Trial Court of Mass.*, 83 F. Supp. 2d 204, 210 (D. Mass. 2000) (dismissing claim seeking decree commanding the Family and Probate Court to "adopt measures to prevent discrimination against men"). To the extent that the Second Amended Petition seeks to assert a claim that the Superior Court acted in violation of Plaintiff's due process rights, the undersigned recommends dismissal for failure to state a claim on which relief may be granted. *See id.*

that judgment should enter for PHH declaring that PHH now holds the mortgage on the

Premises. *See generally Harris v. PHH Mortg. Corp., F/K/A Cendant Mortg. Corp.,* HDCV2011-

00699; Consolidated Case HDCV2012-00347, Amended Findings of Fact, Rulings of Law and Order for

Judgment (Super Ct. filed June 22, 2015).

II.   DISCUSSION

A. Referral to bankruptcy court

1. Jurisdiction

On July 21, 2008, Plaintiff filed a Chapter 7 petition for bankruptcy. He listed PHH as a

creditor in the bankruptcy proceedings. In the related adversary proceeding, the Honorable

Henry Boroff ruled that Plaintiff's debt to PHH was unsecured because PHH did not hold the

Note and the mortgage (Dkt. No. 10-8 at 4-6). It is undisputed that, after Plaintiff's bankruptcy

case was closed in July 2011, PHH: (a) sent Plaintiff a Notice of Mortgagee's Sale of Real Estate

pertaining to the Premises (Dkt. No. 96-4 at 72); and (b) filed suit in the Hampden County

Superior Court to quiet title to the Premises (Dkt. No. 113 at 8). In the Second Amended

Petition, Plaintiff contends that these actions violated the discharge injunction in Title 11 which

"permanently enjoins creditor actions to collect discharged debts." *Bessette v. Avco Fin. Servs.,*

230 F.3d 439, 444 (1st Cir. 2000). Plaintiff seeks damages and declaratory relief for alleged

violations of the postdischarge injunction which, he alleges, is provided for in sections 362, 522

and 524 of the Bankruptcy Code ("the Code"). The undersigned believes that these claims are

properly before this court.[4]

---

[4] Plaintiff's Motion for Summary Judgment is replete with allegations of fraudulent conduct in
the origination and servicing of his mortgage by PHH and by other entities and individuals who
are not parties to this case (Dkt. No. 96 at 3-6, 7-12, 14-15, 17-18, 22-23, 28-33). The Second
Amended Petition does not state any claims based on such assertions of fraud, which therefore
are not properly before this court. *See, e.g., Roman-Oliveras v. Puerto Rico Elec. Power Auth.
(PREPA)*, 655 F.3d 43, 47-48 (1st Cir. 2011) (declining to consider claim that was not

"Generally, a discharge in bankruptcy relieves a debtor from all pre-petition debt, and §

524(a) permanently enjoins creditor actions to collect discharged debts." *Bessette*, 230 F.3d at

444. Following a discharge in bankruptcy, the plaintiff in *Bessette* brought suit in the district

court claiming that a creditor had violated the permanent discharge injunction by seeking to

collect a discharged debt. She sought to represent a class of similarly situated individuals. After

dismissing RICO and state law claims, the district court held that it lacked authority to provide

any remedy for the plaintiff. *See id.* at 442, 445. The United States Court of Appeals for the

First Circuit reversed, noting that whether a discharged debtor has "a private right of action for

damages or sanctions under § 524" is a question that has divided federal courts. *Id.* at 442

(collecting cases). The First Circuit declined to decide the question on the grounds that a

"remedy [wa]s readily and expressly available through another section of the Bankruptcy Code,

namely § 105(a)," *id.* at 442, which, the *Bessette* court held, "provides a bankruptcy court with

statutory contempt powers" to preserve rights provided in the Code. *Id.* at 444-445.

The remaining question for the First Circuit was whether the district court shared

authority with the bankruptcy court to provide a remedy for a violation of the discharge

injunction issued as a matter of course by a bankruptcy court judge pursuant to 11 U.S.C. §

524(a)(2) at the conclusion of a bankruptcy case. The First Circuit again noted a split in

authority, but concluded that, because such a discharge injunction is statutory in nature and not

individually crafted by a bankruptcy judge, "a district court sitting in bankruptcy is similarly

adequately asserted in complaint because Rule 8(a)(2) requires that complaint give opposing
party fair notice of claim and grounds on which it rests). Plaintiff's filings with this court
include copies of escrow notices sent by PHH Mortgage Services to Plaintiff and dated August
23, 2011; August 21, 2012; and August 20, 2013 (Dkt. No. 96-4 at 64-67). Plaintiff was directed
to identify, in his Second Amended Petition, the specific acts by PHH that he alleged were
violations of the discharge injunction. He did not claim that the escrow notices constituted
violations of the discharge injunction, and, accordingly, PHH has not addressed potential claims
based on those notices, which claims would not properly be before this court because they were
not asserted in the Second Amended Petition. *See id*.

authorized to invoke its equitable powers under § 105 when necessary to carry out the provisions of the Bankruptcy Code." *Id.* at 446 (citing *Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1554 (11th Cir. 1996); *Green v. Drexler (In re Feit & Drexler, Inc.)*, 760 F.2d 406, 414-415 (2d Cir. 1985); *Malone v. Norwest Fin. Calif., Inc.*, 245 B.R. 389, 395-398 (E.D. Cal. 2000)). Accordingly, the undersigned concludes that the court has jurisdiction over the claims that PHH violated the discharge injunction imposed in Plaintiff's bankruptcy case pursuant to 11 U.S.C. § 524(a)(2).

    2.   <u>Referral to bankruptcy court</u>

Section 157 of Title 28 of the United States Code provides that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges of the district." The United States District Court for the District of Massachusetts has so provided in its Local Rule 201 which tracks the provisions of 28 U.S.C. § 157. In *Bessette*, having concluded that the district court had jurisdiction to consider the claims asserted by the plaintiff, the First Circuit further ruled that this was not a situation in which the district court was required to exercise its jurisdiction. Rather, "[i]f the district court determine[d] that it [wa]s appropriate to refer the matter back to the bankruptcy court under 28 U.S.C. § 157 and the [applicable] standing order, . . . the bankruptcy court c[ould] accordingly resolve [plaintiff's] claims." *Id.* at 446 (citing *McGlynn v. Credit Store, Inc.*, 234 B.R. 576, 583-584 (D.R.I. 1999) (claim that creditors' actions violated § 524 of the Code were claims "arising under" Title 11 and should be transferred to bankruptcy court)).

While the First Circuit has held that this court has jurisdiction over the claims in Plaintiff's Second Amended Petition, in the view of the undersigned, the court should

7

nonetheless refer this matter to the bankruptcy court pursuant to 11 U.S.C. § 157 and Local Rule 201 because this is a matter arising under Title 11, *see McGlynn*, 234 B.R. at 58, and because the allegation that PHH has violated the discharge injunction entered in Plaintiff's bankruptcy case is a matter which is related to a case under Title 11 (i.e., to Plaintiff's bankruptcy case filed in 2008). Further, the bankruptcy court is in the best position to address Plaintiff's claims because the bankruptcy court is familiar with the facts and issues in the underlying case, and the "[b]ankruptcy court[], with [its] considerable [and specialized] expertise, [is] also indubitably better equipped than [the] district court[] to ensure the uniform administration of the bankruptcy code." *Growe ex rel Great N. Paper, Inc. v. Bilodard, Inc.*, 325 B.R. 490, 493 (D. Me. 2005); *see also McGlynn,* 234 B.R. at 83 (collecting cases, the majority of which were decided by bankruptcy courts, awarding relief based on either 11 U.S.C. § 105(a) or § 524(a)).

For all of the foregoing reasons, the undersigned recommends that the court refer this matter to the bankruptcy court pursuant to 28 U.S.C. § 157 and Local Rule 201.

B. <u>Recommended rulings on parties' cross-motions for summary judgment</u>

In the event that the court declines to refer this case to the bankruptcy court, then, for the reasons set forth below, the undersigned recommends that the court grant in part and deny in part Plaintiff's motion for summary judgment and grant in part and deny in part PHH's cross-motion for summary judgment.

1. <u>Standard of review</u>

When ruling on a motion for summary judgment, the court must construe the facts in a light most favorable to the non-moving party. *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review." *Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 205 (1st Cir. 2006).

   2. Applicable law

As is set forth above, a district court has authority under 11 U.S.C. § 105(a) to enforce the discharge injunction entered in a bankruptcy case by issuance of contempt orders and imposition of contempt sanctions. *See Bessette*, 230 F.3d at 444-445. While the First Circuit has not ruled on the quantum of proof necessary to establish contumacious conduct in violation of a discharge injunction, other courts have held that "[t]he proceeding being in the nature of contempt, the debtor's burden of proving contempt, a violation of the discharge, is the clear and convincing standard." *In re Schlichtmann,* 375 B.R. 41, 94 (Bankr. D. Mass. 2007). To establish civil contempt of the discharge injunction, Plaintiff must prove that PHH committed an act that violated the injunction with general intent to commit the act, and with knowledge of the discharge order. Where "the conduct in question is not overtly violative of the discharge order . . . 'the core issue is whether the creditor acted in such a way as to coerce or harass the debtor improperly.'" *Id.* at 95 (quoting *Pratt v. Gen. Motors Acceptance Corp. (In re Pratt),* 462 F.3d 14, 19 (1st Cir. 2006)). The standard is objective and fact dependent. *See id.*

   3. Plaintiff has not established a violation of 11 U.S.C. § 362

Plaintiff's Second Amended Petition asserts that PHH has violated sections 362, 522, and 524 of the Bankruptcy Code by attempting to collect on a debt that was previously discharged in bankruptcy (Dkt. No. 96 at 1-4). Plaintiff's contention that any action by PHH was in violation of 11 U.S.C. § 362 ("Section 362") can be disposed of in short order.

> Under § 541 of the Bankruptcy Code, the commencement of a bankruptcy case creates an estate that comprises all legal and equitable interests of the debtor in property as of the date the bankruptcy case is commenced. *See* 11 U.S.C. § 541(a). . . . [S]ubject to limited exceptions, the filing of a petition for relief automatically stays all acts against a debtor and property of the estate. *See* 11 U.S.C. § 362(a). However, § 362(c)(2)(B) states unambiguously that the automatic stay terminates when 'the case is dismissed.' 11 U.S.C. § 362(c)(2)(B); *see also Fish Market Nominee Corp. v. Pelofsky*, 72 F.3d 4, 6 (1st Cir. 1995). Although the Bankruptcy Code is not specific as to when the bankruptcy estate terminates, the First Circuit has held that dismissal of the bankruptcy petition immediately terminates both the automatic stay and the bankruptcy estate.

*In re Lomagno*, 320 B.R. 473, 478 (1st Cir. BAP 2005) (citing *In re de Jesus Saez*, 721 F.3d 848, 851 (1st Cir. 1983); *Commonwealth of Mass. v. Papplardo (In re Steenstra)*, 307 B.R. 732, 738 (1st Cir. BAP 2004)).

Plaintiff's bankruptcy case was closed on July 22, 2011 (BCAP Dkt. Report for bk-0831056, Dkt. No. 118). PHH's notice to Plaintiff of possible foreclosure was dated August 8, 2011, after Plaintiff's December 2008 discharge and after his bankruptcy proceeding closed, and could not have violated an automatic stay that ended by operation of law on July 22, 2011 at the latest (Dkt. No. 94-4 at 72). *See In re Rolanti*, No. 12-14189-FJB, 2015 WL 1576275 at *3 (Bankr. D. Mass. April 2, 2015) (automatic stay ended when mortgaged property ceased to be property of estate which happened when case closed; stay ended for all other purposes on entry of discharge). Similarly, PHH did not file its suit to quiet title to the Premises until April 25, 2012, well after Plaintiff's bankruptcy proceeding closed. Accordingly, any claim by Plaintiff that PHH violated the

automatic stay imposed by the terms of Section 362 cannot satisfy a threshold

requirement: none of the acts by PHH of which Plaintiff has provided undisputed proof

occurred before July 22, 2011, the date on which his bankruptcy proceeding closed and

the Section 362 automatic stay in his bankruptcy case ended for all purposes. *See In re*

*de Jesus Saez,* 721 F.2d at 851; *In re Rolanti*, 2015 WL 1576275 at *3.

    4.   Plaintiff has not established a violation of 11 U.S.C. § 522

"Bankruptcy Code § 522 allows a debtor to exempt certain property from the bankruptcy

estate that the trustee distributes to creditors." *In re Weinstein,* 164 F.3d 677, 679 (1st Cir.

1999). It appears that Plaintiff may have invoked 11 U.S.C. § 522 ("Section 522") in the Second

Amended Petition because Section 522 provides, in general terms, that once a debtor properly

identifies property as exempt, that property, with certain statutory exceptions, is not liable for

prepetition debt. *See id.* While Plaintiff claims to have listed the Note as an unsecured debt and

the Premises subject to the mortgage as property of the bankruptcy estate in his bankruptcy

proceeding, he has not claimed or shown that the Premises, which was the subject of a mortgage

duly recorded more than four years before he filed for bankruptcy, was exempt property under

the provisions of Section 522, or that the mortgage on the Premises was a lien that he was

entitled to avoid in bankruptcy (Dkt. Nos. 96, 113-1 at 15-28).

"[T]he issue of whether a particular mortgage is a 'charge against or interest in property

to secure payment of a debt' . . . is one of state law." *In re Smith*, 315 B.R. 636, 640 (Bankr. D.

Mass. 2004). "In Massachusetts, a mortgagee is given a lien to secure the performance of an

obligation or the payment of money, and while an unrecorded mortgage is unenforceable against

third parties, the lien remains valid between the mortgagee and the mortgagor." *In re Sullivan*,

387 B.R. 353, 358 (1st Cir. BAP 2008) (citing Mass. Gen. Laws ch. 183, § 4). Moreover, a

mortgage lien may not be avoided by a Chapter 7 debtor even if the party benefited by the lien

does not hold a secured claim.  *See In re Caliguri,* 431 B.R. 324, 326 (Bankr. E.D.N.Y.  2010).

To the extent Plaintiff seeks to rely on Section 522 to establish that the Premises was property

exempted from the bankruptcy estate or that he could avoid the lien represented by the mortgage

because the bankruptcy judge ruled that PHH did not hold a secured claim, these contentions fail

as a matter fact as to the former claim because he has offered nothing to show that the Premises

was exempt property, and as a matter of law as to the latter claim because he was not entitled to

avoid the mortgage lien.[5]  *See id.*  Moreover, Section 522 does not, by its terms, establish an

injunction against the collection of discharged debts.  *See In re Weinstein,* 164 F.3d at 679.  For

all of these reasons, Plaintiff has not shown, based on undisputed evidence, that any action taken

by PHH was in violation of any provision of Section 522.

> 5.  Plaintiff has not established that PHH's suit to quiet title was a
>      violation of 11 U.S.C. § 524

Section 524(a)(2) of Title 11 ("Section 524") provides, in relevant part, that a discharge

in a case under Title 11 "operates as an injunction against the continuation or commencement of

an action, the employment of process, or an act, to collect, recover or offset any such debt as a

personal liability of the debtor, whether or not discharge of such debt is waived[.]"  Plaintiff

contends that PHH's post-discharge activities – the August 2011 notice of a foreclosure sale and

its suit to quiet title – violated Section 524's prohibition against the post-discharge collection of a

discharged debt.  *See In re Lemieux,* 520 B.R. 361, 365 (Bankr. D. Mass. 2014) (the fundamental

---

[5] Indeed, it appears that had the mortgage on the Premises been a lien that could have been
avoided in Plaintiff's bankruptcy proceeding, the Trustee might have been entitled to claim the
Premises for the benefit of Plaintiff's creditors. *See generally In re Sullivan*, 387 B.R. 353 (1st
Cir. BAP 2008).  Plaintiff's bankruptcy case was a "no asset" proceeding, in which the Trustee
distributed nothing to creditors (BCAP Dkt. Report for bk-0831056, Trustee's Report dated
1/10/2011).

substantive question to be considered is whether the plaintiff has stated a plausible claim that the defendant violated the Section 524(a)(2) discharge injunction by acting to collect a debt).

Plaintiff's bankruptcy discharge did not discharge or otherwise void the mortgage on the Premises. "'Fundamentally, a discharge merely releases the debtor from personal liability on the discharge[d] debt; when a creditor holds a mortgage lien or other interest to secure the debt, the creditor's rights in the collateral, such as foreclosure rights, survive or pass through bankruptcy.'" *Bibolotti v. Am. Home Mortg. Servicing, Inc.*, No. 4:11-CV-472, 2013 WL 2147949, *8 (E.D. Tex. May 15, 2013) (quoting *In re Reuss*, No. DT-07-05279, 2011 WL 152233, *2 (Bankr. W.D. Mich. April 12, 2011)); s*ee also Johnson v. Home State Bank,* 501 U.S. 78, 84 (1981) ("a bankruptcy discharge extinguishes only one mode of enforcing a claim – namely an action against the debtor *in personam* – while leaving intact another – namely, an action against the debtor *in rem"); Palmer v. Wells Fargo, N.A.*, No. CIV S -11-1786-KJM-CMK, 2011 WL 5838365, *2 (E.D. Cal. Nov. 21, 2011). Of particular note in this case,

> the fact that [PHH] sought to perfect its attachment lien after, as opposed to before, the filing of [Plaintiff's] bankruptcy petition does not affect [PHH's] right to secure satisfaction of the debt. '[I]f ,[as in this case,] the lien attaches prior to the period within which the bankruptcy trustee can avoid it as a preference, it need not be perfected in order to survive a discharge in bankruptcy of the underlying indebtedness.'

*Rino Gnesi Co., Inc. v. Sbirglio*, 908 A.2d 1, 7 (Conn. App. 2006) (quoting *Shawmut Bank v. Brooks Dev. Corp.,* 699 A.2d 283 (Conn. App. 1997)).

Where, as here, a discharged debtor continues to occupy property subject to a mortgage lien that was not avoided in bankruptcy, a creditor's acts in aid of foreclosure, made after the dismissal of the bankruptcy proceedings, do not violate Section 524. *See Palmer*, 2011 WL 5838365 at *3. Furthermore, [g]enerally speaking, . . . nothing in the Bankruptcy Code imposes an affirmative duty on a lienholder to assert its *in rem* rights prior to the debtor's securing of a

discharge. . . . a lienholder does not violate section 524(a) by waiting until a bankruptcy case is closed before asserting *in rem* rights." *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 21 (1st Cir. 2002) (citing *Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991)). Even during the pendency of a debtor's bankruptcy case, the postpetition assignment of a mortgage from one lien holder to another is not an act to collect a debt in violation of the automatic stay, because the assignment merely transfers the claim from one entity to another. *See In re Samuels,* 415 B.R. 8, 22 (Bankr. D. Mass. 2009). Nor is the postpetition recording of an assignment of mortgage a violation of the Section 362 automatic stay. *See id.*

By its suit to quiet title, PHH was attempting to reunite the Note and the mortgage so that it could assert in rem rights to foreclose on the Premises on the basis of the mortgage Plaintiff gave to BMC in 2004 (Dkt. No. 113 at 8). This court looks to state law to determine whether a creditor's postdischarge conduct was in violation of Section 524 or "could be legitimized as a valid pursuit of [state law] rights." *In re Canning,* 706 F.3d 64, 71 (1st Cir. 2013). In view of the Supreme Judicial Court's decision in *U.S. Bank Nat. Ass'n v. Ibanez*, N.E. 2d 40, 53-54 (Mass. 2011), in which the court held that "the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage," PHH's attempt to perfect its security interest in the Premises by filing suit seeking an assignment of the Mortgage had a reasonable basis in Massachusetts law. The state court's recent ruling confirming that PHH is entitled to quiet title to the Premises with respect to BMC and is now the holder of the Note and the mortgage confirms that PHH's suit to quiet title was a valid pursuit of its state law rights. *See Harris v. PHH Mortg. Corp., F/K/A Cendant Mortgage Corp.*, Amended Findings of Fact, Rulings of Law and Order for Judgment, * (Super Ct. filed June 22, 2015), *12. Because PHH was not barred by Plaintiff's bankruptcy discharge from seeking to assert any rights in rem it could obtain under state law, *see, e.g., Johnson*, 501 U.S. at 84; *In re Canning*,

14

706 F.3d at 71, and because the steps PHH took postpetition to effect an assignment of the

mortgage on the Premises were not actions in aid of collecting a debt personally from Plaintiff,

*see In re Samuels*, 415 B.R. at 22, it follows that Plaintiff has failed to prove that PHH's suit to

quiet title was a violation of the Section 524 discharge injunction entered in Plaintiff's

bankruptcy case.

6. <u>Plaintiff has established that the August 8, 2011 foreclosure notice
   violated the discharge injunction</u>

On August 8, 2011, PHH took the step that prompted Plaintiff to file suit in state court:

through counsel, it sent Plaintiff a notice of a mortgage foreclosure sale.  The notice informed

Plaintiff that, by virtue of the power of sale in the mortgage given by Plaintiff to BMC, of which

mortgage PHH purported to be the holder, the Premises would be sold at public auction on

September 12, 2011.[6]  The attached letter notified Plaintiff that, if he wanted to reinstate or pay

off the mortgage, he could make a request to do so through a website or by telephone.  The

notice did not request any payment from Plaintiff, although it notified Plaintiff that the issuing

office was attempting to collect a debt and that any information obtained would be used for that

purpose (Dkt. No. 96-4 at 72-74).  While the bankruptcy court might, if this case is referred to it,

take a different view, the undersigned concludes that Plaintiff is entitled to summary judgment

on his claim that PHH violated the discharge injunction when it sent him the notice of a

mortgage foreclosure sale scheduled for September 12, 2011.

---

[6] Section 524 includes a safe harbor for an act by a creditor holding a secured claim if the
creditor retains a security interest in real property that is the principal residence of the debtor; the
act is in the ordinary course of business between the creditor and the debtor; and the act is
limited to seeking or obtaining periodic payments associated with a valid security interest in lieu
of pursuit of in rem relief to enforce the lien.  *See* 11 U.S.C. § 524(j).  PHH has not attempted to
claim the protection of this safe harbor, and it could not do so because it did not hold a security
interest in the Premises at the relevant time.

The foreclosure notice does not directly ask Plaintiff to pay a prepetition debt. Because "the conduct in question is not overtly violative of the discharge order . . . 'the core issue [remain]s whether the creditor acted in such a way as to coerce or harass the debtor improperly.'" *In re Schlichtmann*, 375 B.R. at 95 (quoting *Pratt*, 462 F.3d at 19). PHH does not deny that it knew about the discharge injunction. Nor can it deny that it did not have a valid and perfected mortgage on 615 White Street when it sent Plaintiff the foreclosure notice, and that it knew this to be the case (Dkt. No. 96-4 at 28-29). Indeed, as late as December 2012, PHH conceded that it had no standing to proceed with a foreclosure sale of the Premises pursuant to Massachusetts General Laws ch. 244, § 14 (Dkt. No. 96-4 at 25-26). Instead, PHH asserts that the foreclosure notice was not a violation of the discharge injunction because it was nothing more than an exercise of its rights in rem, which could be enforced after Plaintiff's bankruptcy discharge. But there is "no language in the Code that permits a party that has no contractual or *in rem* relationship to a discharged debtor to send letters asserting such a relationship." *In re Collins*, 474 B.R. 317, 321 (Bankr. D. Me. 2012). With Plaintiff's personal liability on the Note discharged and the mortgage in hands other than those of PHH, PHH had no contractual or in rem relationship with Plaintiff and no basis on which to initiate foreclosure proceedings against Plaintiff or otherwise collect from him on the Note it held. The foreclosure notice announced the imminent sale of Plaintiff's residence by PHH when PHH had no standing to effect such a sale, and was accompanied by a Notice of Mortgagee's Sale of Real Estate falsely representing that PHH was the present holder of the mortgage on the Premises. The notice informed Plaintiff of options for reinstating or paying off the mortgage (Dkt. No. 96-4 at 72-73), although Plaintiff was no longer personally liable for this debt. *See, e.g., Johnson,* 501 U.S. at 85.

There are cases holding that a creditor's postdischarge notice of foreclosure to a debtor does not violate the discharge injunction. For example, the court in *Bibolotti* concluded that a postdischarge notice of foreclosure was not a violation of the discharge injunction even though the debtors had abandoned the real estate that was the subject of the mortgage. The secured creditor intended to exercise its right to foreclose, and the notice merely informed the debtor of the amount of the default and the opportunity to accelerate payment on the mortgage should the debtor choose to do so. Thus, the foreclosure notice was a permissible act in aid of enforcing the creditor's in rem rights and not an attempt to collect on the debt as a personal liability. *See Bibolotti*, 2013 WL 2147949 at *10. *See also Palmer,* 2011 WL 5838365 at *2-3 (creditor entitled to send notice of foreclosure and notice to quit where debtor continued to occupy property without reaffirming debt or making payments on mortgage); *In re Reuss,* 2011 WL 152233 at *1-3 (creditor did not violate discharge injunction by postdischarge inquiry about debtor's intentions regarding mortgaged property). The obvious difference between the *Bibolotti*, *Palmer*, and *Ruess* cases and the instant case is that here, PHH was *not* a secured creditor and knew it was not entitled to foreclose when it sent Plaintiff the August 2011 foreclosure notice. It sent the foreclosure notice with general intent to perform the act and with knowledge of Plaintiff's discharge. *See In re Schlichtmann*, 375 B.R. at 95. Viewing the circumstances objectively, PHH had no reason to send the foreclosure notice other than to coerce Plaintiff into making payments on a debt on which he was not personally liable. In the opinion of the undersigned, the undisputed facts establish that PHH willfully violated the discharge injunction when it sent Plaintiff the August 11, 2011 foreclosure notice. *See, e.g., In re Collins*, 474 B.R. 317, 321 (Bankr. D. Me. 2012) (in light of debtors' discharge, of which creditor had knowledge, purposeless letter relating to past debts and obligations constituted harassment

17

proscribed by discharge injunction); *In re Acosta,* 464 B.R. 86, 96-97 (Bankr. D.P.R. 2011) (entity that initiated foreclosure proceedings lacking proper basis in law willfully violated discharge injunction).

    7.  <u>Partial summary judgment should enter for PHH</u>

       I have set forth above the reasons why, in the court's view, Plaintiff's Second Amended Petition alleged no conduct by PHH that violated Sections 632 and 522 of the Code. For these reasons, the undersigned recommends entering summary judgment for PHH on so much of the Second Amended Petition as alleges violations of Sections 632 and 522. Further, and also for the reasons set forth above, it is my view that PHH is entitled to summary judgment on Plaintiff's claim that its suit to quiet title violated Section 524 of the Code.

       I recommend that PHH's cross-motion for summary judgment be denied with respect to so much of the Second Amended Petition as asserts that the August 2011 foreclosure notice violated the discharge injunction. In bankruptcy, a debtor "has to make a choice as to how to deal with secured property. He can surrender the property to the secured creditor, he can redeem the property by paying the creditor fair market value, he can reaffirm the debt, or he can retain the property as long as continues to make the contract payments." *Palmer*, 2011WL 5838365 at *2 (citing *McClelland Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668 (9th Cir. 1998)). Plaintiff chose none of these options. PHH may well have been frustrated by Plaintiff's untenable position that his bankruptcy discharge entitled him to ownership of the Premises free and clear of the mortgage. *See, e.g., Johnson*, 501 U.S. at 84; *Palmer*, 2011WL 5838365 at *3. Any such frustration, however, did not entitle PHH to invoke the "powerful act" of foreclosure, which may only "proceed in strictly in accordance with the statutes that govern it." *Ibanez,* 941 N.E. 2d at 55-56 (Cordy, J., concurring).

III.    CONCLUSION

For the reasons stated, the undersigned recommends that this case be referred to the

bankruptcy court for decision.  To the extent the court declines to make such a referral, the

undersigned recommends that Plaintiff's motion for summary judgment be granted in part and

denied in part and that the court hold an evidentiary hearing on an appropriate sanction to be

imposed for a violation of the discharge injunction, and that defendant PHH's cross-motion for

summary judgment be granted in part and denied in part.[7]


Dated: June 23, 2015                                    /s/ Katherine A. Robertson
                                                        KATHERINE A. ROBERTSON
                                                        UNITED STATES MAGISTRATE JUDGE

---

[7] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b),
any party who objects to these findings and recommendations must file a written objection with the
Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and
Recommendation.  The written objection must specifically identify the portion of the proposed
findings or recommendations to which objection is made and the basis for such objection.  The
parties are further advised that failure to comply with this rule shall preclude further appellate review
by the Court of Appeals of the District Court order entered pursuant to this Report and
Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir.
1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d
13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor
Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S.
140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days
after being served with a copy thereof.