# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

```
_____
                                    )
In re:                              )
                                    )          Chapter 7
        RONEY HARRIS,               )          Case No. 08-31056-HJB
                                    )
                        Debtor      )
_____ )
```

## REPORT AND RECOMMENDATION

Referred to me by the United States District Court for the District of Massachusetts (the "District Court") are cross-motions for summary judgment filed by Roney Harris, the debtor in this previously-closed Chapter 7 bankruptcy case ("Harris"), and PHH Mortgage Corporation ("PHH").[1]  PHH holds a promissory note executed by Harris, together with rights in a mortgage covering real property owned by Harris to secure payment of that note.  Through these summary judgment motions, the parties seek a ruling on whether, as a matter of law, PHH's actions following the closure of the underlying bankruptcy case

---

[1] The record is ambiguous as to whether the District Court intended to refer the entire case pending before it to the Bankruptcy Court for entry of final orders or whether the District Court intended to refer only the summary judgment motions to the Bankruptcy Court for a Report and Recommendation. In order to avoid confusion, I respectfully recommend that the most conservative approach would be for the District Court to declare that it did not intend to refer the entire case and to accept the following as a Report and Recommendation.  However, if the District Court intended to refer the entire case to the Bankruptcy Court, I respectfully recommend that the District Court withdraw its July 29, 2015 Order of Reference and accept the following as a Report and Recommendation.  Alternatively, if the District Court intended to refer the entire case to the Bankruptcy Court and prefers not to withdraw the reference, I will instead issue final orders disposing of the summary judgment motions and convert this Report and Recommendation to a memorandum of decision in support of those orders.

violated various provisions of the United States Bankruptcy Code[2] – namely, § 524(a)(2) (the "discharge injunction"), § 362(a) (the "automatic stay") and § 522(c) (the prohibition against collection of certain claims against exempt property).  I offer the following Report and Recommendation to the District Court pursuant to its Order of Reference dated July 29, 2015 (Mastroianni, J.).

I.      FACTS AND TRAVEL OF THE CASE

While PHH and Harris may each quibble with certain factual allegations raised by the other, the facts *material* to the outcome of the present contest are not in dispute.

In February 2004, Harris obtained a loan from BMC Mortgage Co. in MA ("BMC") to purchase real property located at 615 White Street in Springfield, Massachusetts (the "Property").  As security for payment of the promissory note (the "Note"), Harris granted BMC a mortgage on the Property (the "Mortgage").  The Mortgage was duly recorded in the Hampden County Registry of Deeds on February 13, 2004.  That was apparently the last time (until recently) both the Note and the Mortgage were held by the same entity.  BMC eventually endorsed the Note over to Cendant Mortgage Corporation ("Cendant").  Cendant later merged with (or was subsumed into) PHH; and PHH is now, and at all relevant times has been, the holder of the Note.[3]

---

[2] See 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code" or the "Code").  All references to statutory sections are to the Bankruptcy Code unless otherwise specified.

[3] In various pleadings, Harris has claimed that PHH is not, for a variety of reasons, the holder of the Note.  Despite Harris's protestations to the contrary, PHH's status as noteholder is not subject to bona fide dispute.  See, e.g., Memorandum of Decision on Roney Harris's Motion to Dismiss and Motion to Compel Discovery, PHH Mortg. Corp. v. BMC Mortg. Co. in MA, Civil Action Nos. 12-00347 and 11-00699 (Mass. Super. Ct. June 24, 2013) (stating that "PHH is the owner of the promissory note"), attached as Ex. C to Plaintiff's Response to Defendant's Opposition to Plaintiff's Motion for Summary Judgment, and Plaintiff's Opposition to Defendant's Cross-Motion

While BMC endorsed the Note to Cendant alone, it was far more generous with respect to the Mortgage.  BMC assigned the Mortgage to two different entities.  First, BMC assigned the Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Wachovia Mortgage Corporation, and that assignment was duly recorded. On the same day, BMC also executed an assignment of the Mortgage to Cendant.  But, as later determined in the Bankruptcy Court, the assignment to Cendant was a nullity, as BMC had no remaining rights in the Mortgage to give to Cendant (since the Mortgage had already been assigned to MERS).  Cendant then purported to assign the Mortgage to MERS, which in turn purported to assign the Mortgage to PHH.  And it is upon this chain of assignments (which really assigned nothing) that PHH originally, and for many years, based its claim of ownership of the Mortgage.  Meanwhile, the first assignment from BMC to MERS was essentially reversed when MERS assigned the Mortgage *back* to BMC. And so it was, in reality, BMC, and not PHH, that was the true holder of the Mortgage during most of the ensuing travails.

Those travails began in late 2007, when Harris stopped making payments on the Note.  Upon default, PHH, believing it held the Mortgage by assignment, initiated foreclosure proceedings.  Those proceedings were stayed when Harris filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 21, 2008 (the "Bankruptcy Case").

### A.    The Bankruptcy Case and the Bankruptcy Court's July 19, 2010 Judgment

In the Bankruptcy Case, PHH moved for relief from the automatic stay imposed by

---

for Summary Judgment, D. Mass. Case No. 3:13-cv-30015-MGM, ECF No. 119, Feb. 18, 2015; Bankr. D. Mass. Case No. 08-31056-HJB, ECF No. 123, Oct. 26, 2015.

§ 362, seeking permission to continue its foreclosure proceedings with respect to the Property (the "Motion for Relief from Stay"). Harris opposed the Motion for Relief from Stay by filing a written objection and by commencing an adversary proceeding (the "Adversary Proceeding") against PHH alleging, *inter alia*, that PHH was not the rightful holder of the Mortgage. At the conclusion of a consolidated evidentiary hearing held before the Bankruptcy Court on both the Motion for Relief from Stay and the Adversary Proceeding (the "Hearing"), it was determined that PHH was not the holder of the Mortgage by way of assignment for the reasons outlined above. Accordingly, the Motion for Relief from Stay was denied on grounds that PHH had no standing to request relief to proceed to foreclose on the Mortgage. A ruling in Harris's favor in the Adversary Proceeding also entered as follows:

> judgment is entered for the Plaintiff insofar as the Court rules that . . . the Defendant PHH Mortgage Corporation did not hold a valid and perfected mortgage on property of the Debtor located at 615 White Street, Springfield, Massachusetts on the date of the commencement of the case.

Judgment, Adversary Proceeding No. 08-3022, ECF No. 173, July 19, 2010 (the "2010 Judgment"). Judgment in favor of PHH was entered on all of Harris's remaining claims asserted against PHH in the Adversary Proceeding. Notably, however, at the conclusion of the Hearing, PHH's request that the Bankruptcy Court opine on whether PHH could proceed postpetition "to obtain a corrective assignment" of the Mortgage was specifically rejected, as the matter was not before the Bankruptcy Court and any statement in that regard would have amounted to an advisory opinion. See July 19, 2010 Hr'g Transcript 6:24-7:11, Adversary Proceeding ECF No. 175, Jan. 21, 2012.

No further action was taken with regard to the Property during the pendency of the Bankruptcy Case. Harris received a discharge of his prepetition debts pursuant to § 727

on December 30, 2008.   The Chapter 7 trustee filed a Report of No Distribution on January 10, 2011, indicating that the bankruptcy estate had been fully administered and no property was available for distribution to creditors.   And the Bankruptcy Case was finally closed on July 22, 2011.

### B.      The State Court and District Court Proceedings

Immediately after the Bankruptcy Case was closed, PHH again initiated foreclosure proceedings with respect to the Property, and on August 11, 2011 mailed to Harris a "Notice of Mortgage Foreclosure Sale" (the "Foreclosure Notice").     The Foreclosure Notice informed Harris that:

> Pursuant to Massachusetts General Laws, Chapter 244, Section 14, as amended, enclosed is a copy of the Notice of Mortgagee's Sale of Real Estate.  Also enclosed is a Deficiency Notice.[4]
>
> This notice is provided to you because an examination of the record title shows that you held an interest of record in the property thirty (30) days prior to the sale.
>
> If you want to reinstate or payoff the mortgage, you may order a reinstatement or payoff 24 hours a day on-line . . . .  Please follow the instructions contained on the web page. . . . You may also contact us during business hours to request a reinstatement or payoff by calling . . . .

Motion for Summary Judgment, Ex. S, D. Mass. Case No. 3:13-vc-30015-MGM, ECF No. 96, Nov. 3, 2015; Bankruptcy Case ECF No. 123.  The attached "Notice of Mortgagee's Sale of Real Estate" stated:

> By virtue and in execution of the Power of Sale contained in a certain mortgage given by Roney L. Harris to BMC Mortgage Co. in MA, dated February 13, 2004 . . . of which mortgage PHH Mortgage Corporation is the present holder, for breach of the conditions of said mortgage and for the purpose of foreclosing, the same will be sold at Public Auction at 2:00 p.m. on September 12, 2011 . . . .

---

[4] A copy of the Deficiency Notice was not provided by either party.

Id.

In response, Harris filed suit in the Superior Court Department of the Massachusetts Trial Court (the "Superior Court") seeking (1) an injunction against the pending foreclosure; (2) damages arising out of PHH's attempt to foreclose on the Property; and (3) a declaration that the Mortgage on the Property was void.  PHH, in turn, filed a complaint to quiet title in the Superior Court, seeking a ruling that would allow it to eventually proceed with the foreclosure as the holder of the Note with the right to compel an assignment of the Mortgage from the then-present holder of the Mortgage (BMC). Ultimately, the two cases pending in the Superior Court were consolidated (together, the "Superior Court Case").  PHH apparently conceded its then-present lack of standing to foreclose, prompting the Superior Court to rule in Harris's favor "solely on the issue of standing to proceed with a foreclosure sale."  Order on the Plaintiff's Motion for Summary Judgment, Harris v. PHH Mortg. Corp., Civil Action No. 11-00699 (Mass. Super. Ct. Dec. 5, 2012), attached as Ex. L to Motion for Summary Judgment, D. Mass. Case No. 3:13-vc-30015-MGM, ECF No. 96; Bankruptcy Case ECF No. 123.  The Superior Court clarified, however, that it "d[id] not rule that PHH will never be able to perfect standing, merely that it does not currently have the requisite standing to proceed under G.L. c. 244, § 14 [the Massachusetts foreclosure statute]."  Id.

Approximately one month later, in January 2013, Harris filed yet another lawsuit against PHH (and others), this time in the federal District Court, alleging, *inter alia*, that PHH was violating the discharge injunction established by § 524 of the Bankruptcy Code by attempting to foreclose on the Property and attempting to gain ownership of the

Mortgage through the quiet title action.[5]   The District Court declined to stay the Superior

Court Case and the remaining issues before the Superior Court were tried in June and

July 2014.

But no ruling from the Superior Court was immediately forthcoming, and the parties

grew impatient.   They proceeded to file cross-motions for summary judgment on the

issues pending before the District Court (the "Harris Summary Judgment Motion," the

"PHH Summary Judgment Motion," and, together, the "Summary Judgment Motions").

While the Superior Court ultimately rendered its decision,[6] its ruling (that PHH *now* holds

the Mortgage and is entitled to foreclose upon it) was only tangentially relevant to the

issues before the District Court (the alleged violations of the automatic stay and discharge

injunction). Ultimately, United States District Court Judge Mastroianni adopted Magistrate

Judge Robertson's recommendation and referred the Summary Judgment Motions to the

Bankruptcy Court.   See District Court Case ECF No. 130, July 29, 2015, Bankruptcy Case

---

[5] In addition to PHH, Harris also named the Chief Justice of the Massachusetts Superior Court and the Hampden County Clerk of Courts as defendants in the District Court Case (the "Superior Court Defendants"), alleging that they, too, were violating (among other things) the discharge injunction by allowing the Superior Court Case to proceed.   The District Court ultimately dismissed all claims against the Superior Court Defendants and, on December 15, 2014, struck those portions of Harris's amended complaint that sought again to assert claims against them.   See District Court Case ECF No. 25, May 8, 2013; ECF No. 108, Dec. 15, 2014 (the "Dismissal Orders").

[6] In its ruling, as reported by United States Magistrate Judge Robertson in her Report and Recommendation on the Summary Judgment Motions, the Superior Court held that, although Harris was entitled to nominal damages for a violation of Mass. Gen. Laws ch. 93A (the Massachusetts consumer protection statute), PHH was ultimately entitled to a judgment declaring that it now holds the Mortgage.   See Report and Recommendation Regarding Parties' Cross-Motions for Summary Judgment at 4-5, District Court Case ECF No. 121, June 23, 2015; Bankruptcy Case ECF No. 123.   Neither party has provided a copy of the Superior Court decision and, therefore, it is not part of the record before the Bankruptcy Court.   No harm done, however, as the outcome of the Superior Court case has little or no relevance to the issues raised in the Summary Judgment Motions, which relate to PHH's actions taken *before* it obtained a valid assignment of the Mortgage.

ECF No. 119, July 30, 2015.  The Bankruptcy Case was administratively reopened and, following a status conference, the Summary Judgment Motions were taken under advisement.[7]

## II.   POSITIONS OF THE PARTIES

### A.   Harris

Harris says that he filed the District Court Case "to enforce the standard injunction against efforts of a purported creditor to collect a discharged bankruptcy obligation by other means than are provided for in 11 U.S.C. Sec. 524, 11 U.S.C. Sec. 362, and 11 U.S.C. Sec. 522 of the United States Bankruptcy Code." Complaint[8] at 1-2.  And through his Summary Judgment Motion, Harris seeks a ruling that PHH violated "those provisions in the Bankruptcy Code that enjoin attempts to get around the injunctions that prohibit

---

[7] Prior to the status conference, Harris filed a "Motion for Order to Show Cause" (the "Show Cause Motion") requesting, *inter alia*, that the Bankruptcy Court issue an order requiring various individuals and entities "to show cause as to why they should not be held in contempt of the Bankruptcy Court for violations of [its] order."  Show Cause Motion, Bankruptcy Case ECF No. 122, Sept. 29, 2015.  The Show Cause Motion identified several parties other than PHH against whom Harris sought relief, including various law firms, BMC, a former BMC officer, the Government National Mortgage Association, MERS, and certain Superior Court officials, judges, and clerks (including the Superior Court Defendants).  Because the Superior Court Defendants had previously been dismissed from the action (which Dismissal Orders constitute the law of the case) and because the requested relief against parties other than PHH was both untimely and outside the scope of the limited matters referred to the Bankruptcy Court by the District Court (namely, the pending Summary Judgment Motions), the Show Cause Motion was denied by order dated November 9, 2015.  See Order, Bankruptcy Case ECF No. 124, Nov. 9, 2015.

[8] Harris's "Second Amended Petition for Enforcement of Injunctions Contained in Bankruptcy Court Discharge and Stay Provisions (Case #08-31056, AP 08-3022) Under the Discharge Injunction of 11 U.S.C. Sec. 524, the Stay Injunction of 11 U.S.C. Sec. 362, the Lien Perfection Injunction of 11 U.S.C. Sec. 522, and other Relief, as Supplemented by Plaintiff's Statement of Injunction Acts Violated by PHH Mortgage Corporation" (the "Complaint") is the operative complaint in this case.  See District Court Case ECF No. 47, Oct. 30, 2013; Bankruptcy Case ECF No. 123.

perfecting unperfected debts, collecting discharged debts, and violating the stay provisions . . . includ[ing] 11 U.S.C. Sections 522, 524 and 362." Harris Summary Judgment Motion at 1.[9]

Underlying each of Harris's claims are various postulations regarding the meaning and legal effect of the 2010 Judgment. Harris maintains that

> [t]he mortgage and Note remain invalid and unenforceable under existing law because they were never perfected into liens against the real property at issue. . . . Under Massachusetts law, the mortgage was never perfected into a lien, and the lien was therefore an "unsecured" obligation that could be – and was – discharged in Plaintiff's Chapter 7 Bankruptcy petition.

Harris Summary Judgment Motion at 12. He claims that the 2010 Judgment amounts to a "rul[ing] that the mortgage was neither valid nor perfected because the Note and mortgage presented by PHH in the proceedings did not connect to Plaintiff's home, and would therefore be discharged by the Court as being 'unsecured.'" Id. at 11.[10] And

---

[9] See also Harris Summary Judgment Motion at 15-16 (PHH's alleged "violations of the injunctions of the Bankruptcy Code (which included [PHH's] efforts to get around the discharge, stay and perfection injunctions) are the core of Plaintiff's claims in his request for summary judgment.").

Both the Complaint and Harris's Summary Judgment Motion are replete with allusions and digressive discussions relative to, inter alia, various other "bad acts" committed by PHH and other entities, alleged "Multifariousness" related to the State Court actions, and the purported invalidity of the Note. See, e.g., Complaint at 2; Harris Summary Judgment Motion at 13-15, 29-33. None of those general allegations state cognizable causes of action. Indeed, the only claims clearly raised in the Complaint and addressed in Harris's Summary Judgment Motion are, as Harris has acknowledged, PHH's alleged "violations of the injunctions of the Bankruptcy Code (which included . . . the discharge, stay and perfection injunctions)." Harris Summary Judgment Motion at 15-16.

[10] See also Harris Summary Judgment Motion at 15 (stating that the Bankruptcy Court "declared the claim by Defendant to be 'invalid', unsecured', and 'unperfected' as of the date Plaintiff filed his petition . . . ."); 16 (claiming that the Bankruptcy Court ruled that the Note "was 'unsecured' by Plaintiff's property"); 24 ("Judge Boroff said the Note had no connection to the security, so the Note was discharged and PHH cannot bring it back."); 25-26 ("Judge Boroff decreed Defendant's claims are 'unsecured', meaning there is no connection between the Note and the mortgaged property. . . . PHH lost its right to compel (if it ever had such a right) when the Judge found they were unsecured . . . . [The law of the case] is that PHH's claim was unsecured, and it could not later become secured.").

In addition to relying on the 2010 Judgment in support of his argument that the Note was an

because Harris interprets the 2010 Judgment as a ruling that the Mortgage "did not attach to [Harris's] home," id. at 2, Harris maintains that the discharge injunction prohibits PHH not only from attempting to collect on the Note against Harris as a personal liability, but also from seeking satisfaction of the Note against the Property.

Beginning with his underlying premise that the 2010 Judgment ruled that the Mortgage was "'invalid', 'unsecured', and 'unperfected,'" Harris Summary Judgment Motion at 15, Harris characterizes PHH's postpetition "attempt to quiet [ ] title [in the

––––––––––––––––––––

unsecured debt discharged through the Bankruptcy Case, Harris also relies on the fact that the

> debt had been included in [Harris]'s petition as being "unsecured" in Schedule "F" of said petition. . . . The court issued deadlines for defendants to contest the dischargeability of said debt, and said deadline expired without a challenge from Defendant. Thereafter, the Court issued a discharge of all "unsecured" debts in Plaintiff's petition, including the Defendant's purported debt.

Id. at 3; see also id. at 22 (emphasizing the "undisputed fact that the 'unsecured' debt was included in Plaintiff's petition as an unsecured debt in Schedule 'F'. The debt was subsequently discharged by the Bankruptcy Court . . . ."). Harris further claims that his "fil[ing] a copy of said discharge in the land records, along with the bankruptcy clerk's notice that no timely appeal was taken from the discharge decree . . .effectively quieted [Harris]'s title, and exclusively vested said title in [Harris]." Id.
But Harris's argument regarding the effect of listing a creditor on a particular bankruptcy schedule has already been rebuffed (in an unrelated adversary proceeding):

> [l]isting a creditor on Schedule F (the list of unsecured creditors) does not render that creditor's validly-secured debt unsecured, even if the creditor never objects to that classification. The schedules filed by the Debtor are designed to assist the Chapter 7 trustee and creditors in determining the state of the Debtor's financial affairs, and those schedules cannot, of themselves, extinguish a secured claim improperly characterized therein.

Harris v. HSBC Bank USA (In re Harris), 450 B.R. 324, 330 n.25 (Bankr. D. Mass. 2011). And the Massachusetts Supreme Judicial Court has stated, in the same spirit, that "there is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect . . . . Recording is not sufficient in and of itself . . . to render an invalid document legally significant." Bevilacqua v. Rodriguez, 955 N.E.2d 884, 892, 460 Mass. 762 (2011). Accordingly, Harris's assertion that listing the Note on Schedule F of the bankruptcy petition resulted in a discharge of the Note (and associated Mortgage) as an unsecured debt and that recording the discharge order with a notice of no appeal vested title to the Property in Harris alone can be categorically rejected.

Superior Court] [ ] as tantamount to making attempts to perfect a lien that was not perfected when Plaintiff's bankruptcy petition was filed," id. at 7.  This effort to "perfect" the Mortgage, Harris says, is prohibited by (1) the discharge injunction imposed by § 524; (2) the automatic stay imposed by § 362 (which Harris maintains "remains in effect" and precludes PHH from "pursu[ing] any State rights, if any such rights were available, including foreclosure," id. at 11); and (3) § 522(c) (which Harris characterizes as the "lien perfection" section of the Bankruptcy Code that operates as an injunction "against any attempt to perfect an unperfected, discharged lien," id. at 9).

### B.    PHH

PHH acknowledges that Harris's personal liability on the Note was discharged through the Bankruptcy Case, but insists that it is not pursuing collection on the Note from Harris personally.  PHH reads the 2010 Judgment as establishing only that PHH did not have standing, *as of the commencement of the bankruptcy case*, to proceed with foreclosure, because it was not then the holder of the Mortgage.  PHH disputes Harris's contention that the 2010 Judgment declared the mortgage void, invalid, or unperfected, and maintains that the Mortgage lien survived the Bankruptcy Case and remains enforceable against the Property in accordance with state law.  PHH says that its effort in the Superior Court to obtain possession of the Mortgage in order to foreclose on the Property does not violate the § 524 discharge injunction (or the provisions of § 362 and § 522) because its postpetition actions constitute a permissible exercise of *in rem* rights against the Property, which rights remain unaffected by the discharge of Harris's personal liability.

III.   <u>DISCUSSION</u>

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable to this contested matter by Fed. R. Bankr. P. 7056 & 9014(c)).   Because the facts material to the Summary Judgment Motions are not in dispute, the issues raised by the cross-motions may be determined as a matter of law.

### A.    The 2010 Judgment: What it Said and What it Did Not.

Permeating the entirety of Harris' Complaint and Summary Judgment Motion is a profound misunderstanding (or mischaracterization) of the legal effect of the 2010 Judgment (and the related order denying PHH's Motion for Relief from Stay).   The 2010 Judgment did not, as Harris asserts, speak to the underlying validity or perfection of the Mortgage.   Rather, the judgment stated *only* that, as of the date of the commencement of the Bankruptcy Case, *PHH* "did not hold a valid and perfected mortgage against the Property."   Accordingly, *PHH* lacked standing to seek relief from stay to foreclose on the Property and the Motion for Relief from Stay was therefore denied.   The 2010 Judgment was not a ruling that the Mortgage was unperfected; it said only that *PHH* did not hold a perfected mortgage.   The 2010 Judgment was not a determination that the Note was unsecured; it declared only that *PHH* did not possess, at that time, a security interest in the Property.   The 2010 Judgment did not "void" the Mortgage, nor was it a ruling that the Mortgage was "invalid."    The 2010 Judgment did not declare that the Note was "unsecured" and therefore discharged in its entirety through the Bankruptcy Case.   Simply put, the 2010 Judgment did little more than declare that PHH did not, at that particular point in time, have ownership of the Mortgage and its associated rights against the

Property.   And, in fact, PHH's request that the Bankruptcy Court rule on the issue of whether PHH could, in an appropriate proceeding, attempt to regain that ownership was specifically denied.

**B.      PHH is Not in Contempt of the Discharge Injunction Provided by § 524 Because it Has Attempted (and is Attempting) Only to Exercise its *in rem* Rights against the Property in Accordance with State Law**

"Generally, a discharge in bankruptcy relieves a debtor from all pre-petition debt, and § 524(a) permanently enjoins creditor actions to collect discharged debts." Bessette v. Avco Fin. Servs, Inc., 230 F.3d 439, 444 (1st Cir. 2000).   Specifically, § 524 provides that the bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor*."   11 U.S.C. § 524(a)(2) (emphasis supplied).   To remedy violations of the discharge injunction (i.e., attempts to collect a discharged debt as a personal liability of the debtor), the "bankruptcy court is authorized to invoke § 105 . . . and order damages . . . if the merits so require."   Bessette 230 F.3d at 445.

But the discharge injunction bars only the collection of a discharged debt as a *personal* liability of the debtor; it "does not enjoin a secured creditor from recovering on valid prepetition liens."   Canning v. Beneficial Maine, Inc. (In re Canning), 706 F.3d 64, 69 (1st Cir. 2013).   As Judge Hillman explained in Drake v. Mass. Dep't of Revenue (In re Drake),

> a secured claim is comprised of "two components: the debtor's *in personam* liability on the obligation secured by the lien and the creditor's *in rem* rights to proceed against the collateral."   This distinction is relevant in bankruptcy cases because a Chapter 7 "discharge extinguishes *only* 'the personal liability' of the debtor" and a secured creditor's *in rem* right to pursue the collateral attached to the claim "survives or passes through bankruptcy."

"Indeed, the Supreme Court of the United States has expressly stated that
'[o]rdinarily, liens and other secured interests survive bankruptcy.'"

434 B.R. 11, 20 (Bankr. D. Mass. 2010) (quoting, citing Johnson v. Home State Bank,

501 U.S. 78, 81, 111 S. Ct. 2150, 115 L.Ed.2d 66 (1991); Farrey v. Sanderfoot, 500 U.S.

291, 297, 111 S. Ct. 1825, 114 L.Ed.2d 337 (1991); Anderson v. Richards (In re

Anderson), No. 07-1328, 2009 WL 4840871, *7 (Bankr. D. Mass. Dec. 10, 2009); 11

U.S.C. 524(a)(1)).   "[I]t is only a debtor's personal obligation to pay the debt that is

effectively extinguished; the debt itself remains."   Bibolotti v. Am. Home Mortg. Servicing,

Inc.), No. 4:11-CV-472, 2013 WL 2147949, *8 (E.D. Tex. May 15, 2013) (quoting In re

Mahoney, 368 B.R. 579, 585 (W.D. Tex. 2007)).

 "It is hornbook law that a valid lien survives a discharge in bankruptcy *unless it is

avoidable and the debtor takes the proper steps to avoid it.*"   Arruda v. Sears, Roebuck &

Co., 310 F.3d 13, 21 (1st Cir. 2002) (emphasis supplied) (citing Holloway v. John Hancock

Mut. Life Ins. Co. (In re Holloway), 81 F.3d 1062, 1063 (11th Cir. 1996)).   "[F]or a lien to

be avoided during the bankruptcy case, some action must take place – presumably the

entry of a court order – that serves expressly or by operation of law to avoid the lien."

Cusato v. Springleaf Fin., Inc. (In re Cusato), 485 B.R. 824, 831 (Bankr. E.D. Pa. 2013).

In this case, there exists no court order declaring the Mortgage void, avoided, or even

avoidable.   The 2010 Judgment addressed only whether PHH *held* the Mortgage; it did

not declare that the Mortgage was invalid.   The finding that PHH lacked standing to

foreclose did not affect the validity and perfection of the Mortgage.   See, e.g., In re Tamir,

535 B.R. 465, 467 (Bankr. D. Me. 2015) (issue of standing to foreclose is not relevant to

the question of the validity of the security interest as an initial matter) (citing Vienna Park

Props. v. United Postal Sav. Assoc., 976 F.2d 106, 113 (2d Cir. 1992); In re Phillips, 491

14

B.R. 255, 274 (Bankr. D. Nev. 2013)).  And the discharge under § 727 itself "did not . . . convert [the] secured debt into an unsecured debt, nor did it render [the Mortgage] invalid." Best v. Nationstar Mortg. LLC (In re Best), 540 B.R. 1, 6 (B.A.P. 1st Cir. 2015). Accordingly, to the extent the Mortgage is enforceable under relevant state law,[11] it remains enforceable against the Property. Arruda, 310 F.3d at 21.

### 1.    The Quiet Title Action

Because the Mortgage was not avoided (or declared invalid or unperfected) during the Bankruptcy Case, the *in rem* rights it provides under state law vis-à-vis the Property, whether exercised by PHH or another entity holding the Mortgage, have survived intact. Under Massachusetts law, a quiet title action is an *in rem* proceeding, see Bevilacqua, 955 N.E.2d at 889 n.5, available to the holder of a promissory note as a vehicle to compel the assignment of a related mortgage from whichever entity currently has ownership of it, see U.S. Bank Nat. Ass'n v. Ibanez, 941 N.E. 2d 40, 54, 458 Mass. 637 (2011) ("the holder of the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain an assignment of the mortgage, which may be accomplished by filing an action in court and obtaining an equitable order of assignment"); see also Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1125, 462 Mass. 569 (2012) (same). PHH's quiet title action was not an attempt to "perfect" a lien; it was an attempt to gain *ownership* of an *already*-perfected mortgage lien by compelling the assignment of that mortgage. See, e.g. In re Cook, 457 F.3d 561, 568 (6th Cir. 2006) (transfer of a mortgage is not an attempt to perfect legal title to the underlying property); Patton v. State Street

---

[11] There is no evidence that the Mortgage itself is not enforceable or perfected.  As previously explained, the Bankruptcy Court has not ruled as such, nor does it appear that any other court has issued such a ruling either.

Bank (In re Patton), 314 B.R. 826, 833, 834 (Bankr. D. Kan. 2004) (the assignment of a mortgage is a transfer of title to the mortgage instrument and does not change the nature, validity, or perfection of the mortgage itself).

"Bankruptcy law, we must emphasize, cannot alter a secured creditor's state-law rights, unless it is shown that those rights are relied upon to coerce payment of a discharged debt." Canning, 706 F.3d at 72.  PHH had the right under state law, as the holder of the Note, to seek *in rem* relief through the quiet title action to obtain an order compelling the assignment of the Mortgage.  There is no evidence that PHH relied on its state-law right to bring the quiet title action to harass or coerce Harris into personally paying the balance due on the Note.   Accordingly, the quiet title action did not run afoul of the discharge injunction.  See Martinez v. Olague (In re Martinez), Bankruptcy No. CC-11-1099-DKiPa, Adversary No. 10-03133-ER, 2011 WL 6934474, *5 (B.A.P. 9th Cir. Oct. 11, 2011) (quiet title action to establish creditor's secured interest in real property was proceeding *in rem* and not barred by the discharge injunction).

    2.    The Foreclosure Notice

The Foreclosure Notice also did not violate the discharge injunction, even though it was sent by PHH at a time when it was not, under state law, entitled to foreclose because it did not own the Mortgage.

"The discharge injunction does not prohibit every communication between a creditor and a debtor – 'only those designed "to collect, recover or offset any such debt as a *personal liability* of the debtor."'  In re Gill, 529 B.R. 31, 37 (Bankr. W.D.N.Y. 2015) (quoting In re Whitaker, No. 09-50301, 2013 WL 2467932, at *8, 2013 Bank. LEXIS 2328, at *23 (Bankr. E.D. Tenn. June 7, 2013); In re Brown, 481 B.R. 351, 358 n.10 (Bankr.

W.D. Pa. 2012)).  A creditor is prohibited from demanding payment of a discharged debt, but is not prohibited from contacting a debtor to inform the debtor of the creditor's intention to foreclose.  Best, 540 B.R. at 10; see also Jackson v. ING Bank, FSB (In re Jackson), 545 B.R. 62, 70 (Bankr. D. Mass. 2016) (notice of foreclosure sale did not violate discharge injunction since it merely provided information and did not demand payment); Bibolotti, 2013 WL 2147949, *10 (notice of default and intention to foreclose did not demand payment or require any action to be taken by debtor and therefore did not violate the discharge injunction).

    In determining whether a particular communication or the exercise of a state-law in rem right crosses the line from permissible communication or conduct to a de facto demand for payment, the question is whether the action or communication is "objectively coercive."  Pratt v. Gen. Motors Acceptance Corp., 462 F.3d 14, 19 (1st Cir. 2006); see also Lumb v. Cimenian (In re Lumb), 401 B.R. 1, 6 (B.A.P. 1st Cir. 2009) ("In Pratt, the First Circuit emphasized that courts are to use an objective test in determining whether a creditor's actions were improperly coercive under the circumstances.").

    Here, the Foreclosure Notice merely informed Harris of PHH's intention to foreclose; it did not demand payment on the Note, indicate an intent to hold Harris personally liable, or contain language that could be objectively read as an attempt to coerce or harass Harris into making further payment on the Note.  As in Bibolloti, the Foreclosure Notice here merely informed Harris of the default on the Note, PHH's intention to foreclose on its mortgage, and Harris's opportunity to cure the default should he wish to do so.  "This letter is permissible under the discharge injunction, and appears to be precisely the type of communication the discharge injunction allows secured

creditors to use in order to enforce their rights against a property *in rem*, rather than personally against a debtor." Bibolotti, 2013 WL 2147949 at *10.

The fact that PHH was not actually the holder of the Mortgage at the time the Foreclosure Notice was sent rendered PHH's actions foolhardy at best (since, under Massachusetts law, a subsequent foreclosure would have been invalid, see Ibanez, 941 N.E.2d at 54).  But PHH's lack of standing does not change the fact that, objectively read, the Foreclosure Notice does not demand Harris's payment on the Note.  See, e.g., Brown v. Bank of America (In re Brown), 481 B.R. 351, 354 n.3 (Bankr. W.D. Pa. 2012) (standing to foreclose is not relevant to determining whether an entity violated the discharge injunction but is a question for the state court where foreclosure proceedings were commenced).[12]

Because neither the quiet title action nor the Foreclosure Notice constituted attempts by PHH to hold Harris personally liable under the Note, PHH did not violate the discharge injunction imposed by § 524.

### C. PHH Did Not Act in Contravention of § 522(c) because the Mortgage was Not Avoided

Harris also argues that PHH has acted in contravention of § 522(c) of the Bankruptcy Code by seeking to "perfect" its Mortgage through the quiet title action.  First, as noted above, the quiet title action is not an attempt to "perfect" a mortgage, but to gain ownership of the mortgage instrument.  Second, § 522(c), which provides that a debtor's exempt property is not liable after a bankruptcy case for prepetition debts, specifically excludes from its reach "a debt secured by a lien" that is not avoided or declared void

---

[12] Whether PHH is liable under any relevant state law for sending the Foreclosure Notice at a time when it did not hold the Mortgage is a question properly left to the state courts.

during the bankruptcy proceeding.  11 U.S.C. § 522(c).[13]  Because the Mortgage was not

avoided or declared void during the Bankruptcy Case, the prohibition set forth in § 522(c)

does not apply.

    **D.**    **PHH Did Not Violate the Automatic Stay Imposed by § 362(a) of the Bankruptcy Code Because the Automatic Stay Had Already Terminated by Operation of Law**

Broadly speaking, the automatic stay codified in § 362(a) of the Bankruptcy Code

prohibits a creditor from proceeding with any action to enforce or collect a debt against

the debtor, the debtor's property, or property of the bankruptcy estate, by prohibiting a

creditor from, among other things, creating, perfecting, or enforcing a lien against the

debtor's property or property of the bankruptcy estate *during the pendency* of the

bankruptcy case (unless the creditor is granted relief from that prohibition from the

bankruptcy court).  See 11 U.S.C. § 362(a)(1), (4), (5).[14]  While Harris's Bankruptcy Case

---

[13] Section 522(c) specifically provides, in relevant part:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, *except* –
>
> . . .
>
>     (2) a debt secured by a lien that is –
>
>         (A)    (i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title;
>
>             . . . .

11 U.S.C. § 522(c) (emphasis supplied).

[14] Specifically, § 362(a) provides (as relevant here) that the filing of a bankruptcy petition:

> operates as a stay, applicable to all entities, of –
>
>     (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim

was pending, the automatic stay remained in effect, prohibiting PHH from proceeding with foreclosure of the Property.  PHH was not granted relief from the automatic stay during the pendency of the Bankruptcy Case because PHH lacked standing to seek such relief on account of its failure to establish its ownership of the Mortgage.

"The stay, however, is not permanent."  Mass. Dep't. of Revenue v. Crocker (In re Crocker), 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007).  The automatic stay imposed by § 362 terminates with regard to property of the bankruptcy estate when the property "is no longer property of the estate." 11 U.S.C. §362(c)(1).[15]  As of July 22, 2011, when the Bankruptcy Case was closed, the Property was no longer property of the bankruptcy estate, and the automatic stay provisions ceased to apply.  See id.; 11 U.S.C. § 544(c) (disclosed property of the estate is deemed abandoned and administered upon closing of the case); In re Rolanti, 2015 WL 1576275, *3 (Bankr. D. Mass. April 2, 2015).  Accordingly, Harris is incorrect in his assertion that "the stay has remained in effect as to [the P]roperty," Complaint at 6, as it has *not* been in effect since the closing of the Bankruptcy Case. Because PHH did not reinitiate its attempts to foreclose on the Property until *after* the

---

against the debtor that arose before the commencement of the case under this title;
. . .

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
. . . .

11 U.S.C. § 362(a)(1), (4), (5).

[15] With respect to acts against the debtor and the *debtor's* property, the stay terminates earlier, when the debtor receives a discharge or upon dismissal or closure of the case.  11 U.S.C. § 362(c)(2).

closing of the Bankruptcy Case (and thus after the termination of the automatic stay), PHH did not violate § 362.


IV.    CONCLUSION

In sum, PHH has not violated the § 524 discharge injunction through either the sending of the Foreclosure Notice or the filing and prosecution of the quiet title action in the Superior Court.  Nor has PHH run afoul of either § 522(c) or § 362(a) of the Bankruptcy Code, as neither section is applicable here.  Accordingly, I respectfully recommend that PHH's Summary Judgment Motion be GRANTED and Harris's Summary Judgment Motion be DENIED.


DATED: May 26, 2016                              By the Court,

_____
Henry J. Boroff
United States Bankruptcy Judge